UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN CIOINIGEL,

               Plaintiff,

      -against-

DEUTSCHE BANK AMERICAS HOLDING
CORP.; DEUTSCHE BANK AMERICAS
SEVERANCE PAY PLAN; AND DEUTSCHE
BANK TRUST COMPANY AMERICAS,

            Defendants.

Civil Action No. 12 CIV 0434 (BSJ) (FM)

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION TO DISMISS

**LITTLER MENDELSON, P.C.**
Deidre A. Grossman
900 Third Avenue
New York, New York 10022
Telephone: 212.583.9600

Attorneys for Defendants
Deutsche Bank Americas Holding Corp.;
Deutsche Bank Americas Severance Pay Plan;
and Deutsche Bank Trust Company Americas

# TABLE OF CONTENTS

**Page(s)**

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  STATEMENT OF FACTS ALLEGED IN THE COMPLAINT ...................................... 2

    A.   The Plaintiff ........................................................................... 2

    B.   The Deutsche Bank Americas Severance Pay Plan ................................. 3

    C.   Plaintiff Files An Administrative Claim Beyond The Plan Deadline .................. 4

    D.   The Complaint/ERISA Claims ..................................................... 4

III. ARGUMENT ................................................................................ 5

    A.   Applicable Legal Standard .......................................................... 5

    B.   Plaintiff's ERISA Section 502(a)(1)(B) Claim Should Be Dismissed ................ 5

        1.   The Unambiguous Terms Of The Plan Foreclose Plaintiff's Benefit Claim ........................................................................... 5

        2.   Plaintiff's Benefit Claim Is Barred, In Any Event, For Failure To Timely Exhaust The Plan's Administrative Remedies ........................... 7

    C.   Plaintiff's ERISA Section 510 Claim Should Be Dismissed ......................... 9

        1.   Plaintiff's Section 510 Claim Fails Because the Bank Took No Adverse Employment Action Against Him ..................................... 9

        2.   Plaintiff's Section 510 Claim Also Fails Because He Seeks Relief That Is Unavailable Under ERISA Section 502(a)(3) ......................... 13

IV.  CONCLUSION .............................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Bosch Auto. Sys.*,
    No. 05-6010, 232 F. App'x 491 (6th Cir. 2007) ........................................................13

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ..............................................................................................5

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .........................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................5

*Blake v. Bank of New York*,
    No. 90 Civ. 4202, 1992 U.S. Dist. LEXIS 10877 (S.D.N.Y. July 22, 1992) ...........10

*Blessing v. J.P. Morgan Chase & Co.*,
    394 F. Supp. 2d 569 (S.D.N.Y. 2005) .....................................................................11

*Bodine v. Emplrs. Cas. Co.*,
    352 F.3d 245 (5th Cir. 2003) ...................................................................................11

*Brehmer v. Inland Steel Indus. Pension Plan*,
    114 F.3d 656 (7th Cir. 1997) .............................................................................11, 12

*Chapman v. ChoiceCare Long Island Term Disability Plan*,
    288 F.3d 506 (2d Cir. 2002) .....................................................................................7

*Conkright v. Frommert*,
    130 S. Ct. 1640 (2010) ...............................................................................................8

*Degrooth v. General Dynamics Corp.*,
    837 F. Supp. 485 (D. Conn. 1993) ..........................................................................10

*Dister v. Continental Group, Inc.*,
    859 F.2d 1108 (2d Cir. 1988) ....................................................................................9

*Downes v. J.P. Morgan Chase & Co.*,
    No. 03 Civ. 8991, 2004 U.S. Dist. LEXIS 10510 (S.D.N.Y. June 3, 2004) ............10

*DuPont v. Sklarsky*,
    No. 08-1724 (JAP), 2009 U.S. Dist. LEXIS 23056 (D.N.J. Mar. 20, 2009) ............8

PAGE

*Eichorn v. AT&T Corp.*,
    484 F.3d 644 (3d Cir. 2007)...........................................................................14

*Griffin v. New York State Nurses Ass'n Pension Plan & Benefits Fund*,
    757 F. Supp. 2d 199 (E.D.N.Y. 2010) ...............................................................6

*Keir v. Unumprovident Corp.*,
    No. 02 CIV 8781, 2010 U.S. Dist. LEXIS 95560 (S.D.N.Y. Sept. 14, 2010).........10

*Kennedy v. Empire Blue Cross & Blue Shield*,
    989 F.2d 588 (2d Cir. 1993)..............................................................................8

*Kesselman v. Rawlings Co., LLC*,
    668 F. Supp. 2d 604 (S.D.N.Y. 2009)................................................................7

*Kirk v. Readers Digest Ass'n*,
    57 F. App'x 20 (2d Cir. 2003) ..........................................................................6

*Klotz v. Xerox Corp.*,
    332 F. App'x 668 (2d Cir. 2009) ......................................................................9

*Mansfield v. Lucent Techs.*,
    No. 04 Civ. 3589, 2005 U.S. Dist. LEXIS 20036 (D.N.J. Sept. 1, 2005)............10

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993).......................................................................................13

*Miller v. Rite Aid Corp.*,
    334 F.3d 335 (3d Cir. 2003)..............................................................................7

*Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.*,
    No. 5:06-CV-42, 2007 U.S. Dist. LEXIS 21252 (N.D.N.Y. Mar. 26, 2007) ...........8

*Pagan v. NYNEX Pension Plan*,
    52 F.3d 438 (2d Cir. 1995)...............................................................................5

*Rellou v. JP Morgan Chase Long-Term Disability Plan*,
    No. 07-CV-1334, 2009 U.S. Dist. LEXIS 91433 (S.D.N.Y. Sept. 30, 2009), *aff'd*, 439
    F. App'x 21 (2d Cir. 2011) ...............................................................................6

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)................................................................................2

*Sallee v. Rexnord Corp.*,
    985 F.2d 927 (7th Cir. 1993) ..................................................................7, 12, 13

ii.

PAGE

*Sandberg v. KPMG Peat Marwick, LLP*,
    111 F.3d 331 (2d Cir. 1997) ..................................................................................13

*Stout v. Bethlehem Steel Corp.*,
    957 F. Supp. 673 (E.D. Pa. 1997) .........................................................................11

*Suthar v. Eastman Kodak Co.*,
    No. 09-CV-6403-CJS, 2010 U.S. Dist. LEXIS 41859 (W.D.N.Y. Apr. 28, 2010) ..................8

*Thomas v. Verizon*,
    No. 04-5232 Civ., 2005 U.S. App. LEXIS 25424 (2d Cir. Nov. 22, 2005) ...........................8

*Tirone v. New York Stock Exch., Inc.*,
    No. 05 Civ. 8703, 2006 U.S. Dist. LEXIS 69591 (S.D.N.Y. Sept. 28, 2006) ......................10

*Wharton v. Duke Realty, LLP*,
    467 F. Supp. 2d 381 (S.D.N.Y. 2006) ..............................................................6, 13

**STATUTES**

29 U.S.C. § 1132(a)(1)(B) .........................................................................1, 5, 7, 9, 10

29 U.S.C. § 1132(a)(3) ................................................................................9, 13, 14

29 U.S.C. § 1140 .............................................................1, 2, 4, 9, 10, 11, 12, 13, 14

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................5

## I.  PRELIMINARY STATEMENT

On May 9, 2011—a month and a half before his position with Deutsche Bank Trust Company Americas (the "Bank") was scheduled to be eliminated (on June 30, 2011)—plaintiff Adrian Cioinigel ("Plaintiff") resigned from the Bank to accept employment with another company.  By resigning, Plaintiff became ineligible for severance benefits under the terms of the Deutsche Bank Americas Severance Pay Plan (the "Plan"), which affords benefits only to those employees who are: (i) involuntarily terminated; and (ii) remain employed in good standing until the termination date selected for them by the Bank ("Termination Date").  Plaintiff nevertheless commenced this action under ERISA, seeking severance benefits under two separate legal theories.  He contends that, under ERISA Section 502(a)(1)(B), he is entitled to severance under the Plan's provisions.  He also seeks benefits under ERISA Section 510, claiming that the Bank interfered with his right to severance by declining to terminate his employment before his official Termination Date.

Plaintiff's Section 502(a)(1)(B) claim deserves short shrift because it is foreclosed by the Plan's unambiguous terms.  Those terms plainly provide that employees who, like Plaintiff, resign from their positions before their Termination Dates are ineligible for severance benefits. But even if the Plan were less clear (which it is not), Plaintiff's claim for benefits should still be dismissed because Plaintiff did not timely exhaust the Plan's administrative procedures before commencing this action.

Plaintiff's claim under ERISA Section 510 claim should also be dismissed because the Complaint fails to allege that the Bank took adverse employment action against Plaintiff, which is an essential element of a Section 510 claim.  Rather, Plaintiff concedes that the Bank offered him continued employment until June 30, 2011, at which time he would have been eligible for severance benefits.  As a matter of settled law, the Bank's refusal to terminate Plaintiff's

employment before his scheduled Termination Date, in order to render him eligible for benefits, does not qualify as adverse employment action triggering Section 510's protections. And Plaintiff's claim fails, in any event, because the benefits he seeks are not a remedy available under ERISA for alleged Section 510 violations.

For all of these reasons, this Court should dismiss the Complaint in its entirety.

## II.   STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

This statement is based on the allegations of the Complaint ("Compl.") and certain additional documents referenced therein, which this Court may consider when evaluating a motion to dismiss. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.") (citations omitted).[1]

### A.   The Plaintiff

Beginning in August 2000, Plaintiff worked as an Assistant Vice President for the Bank's Global Loan Services Division. (Compl. ¶ 9). In or about March 2011, Plaintiff was notified that his position with the Bank was transitioning to Jacksonville, Florida and that his employment would terminate no later than June 30, 2011. (*Id.* ¶ 13). Prior to his termination from the Bank, Plaintiff began seeking employment elsewhere and received an offer of employment from another company. (*Id.* ¶¶ 17-18). Plaintiff informed the Bank that he planned to resign in order to accept the new position. (*Id.* ¶ 18). The Bank responded that, if Plaintiff left employment prior to June 30, 2011, he would be ineligible for severance benefits. (*Id.*).

---

[1] These additional documents are appended as exhibits to the Declaration of Bernadette H. Whitaker ("Whitaker Decl.").

Plaintiff nevertheless resigned from the Bank effective May 9, 2011.  (Whitaker Decl., Ex. D).

## B.   The Deutsche Bank Americas Severance Pay Plan

Despite his resignation, Plaintiff commenced this action to seek severance benefits. Those benefits are provided under the Deutsche Bank Americas Severance Pay Plan.  The Plan's stated purpose is to provide benefits to "eligible employees of the Bank whose employment is involuntarily terminated under the circumstances described [in the Plan]."  (Whitaker Decl., Ex. A at § 1).  Specifically, the Plan extends benefits only to terminated employees if the employee "remains in his or her position in good standing until the last day of employment on the active payroll of the Bank ("Termination Date") as designated by the Bank in its sole discretion."  (*Id.* at § 2(a)(i)).[2]  The Plan further provides that an employee is <u>not</u> eligible for benefits if his or her termination is the result of "the employee's resignation, retirement or other voluntary termination of employment."  (*Id.* at § 2(c)(i)).

Under the Plan, employees who are eligible for benefits will be notified and provided the necessary documentation to obtain the benefits in question. (*Id.* at § 8).  An employee who does not receive an initial determination, but nevertheless believes that he or she is entitled to benefits under the Plan, must submit a written statement to the Plan's Oversight Committee within 60 days of the employee's Termination Date, which the Plan defines as "the last day of employment on the active payroll of the Bank." (*Id.* at §§ 2(a)(i), 8).[3]   Within 90 days thereafter, the Oversight Committee will notify the employee if his or her claim is wholly or partially denied. (*Id.* at § 8).  If the employee wishes to challenge the Oversight Committee's determination, he or

---

[2] The Plan contains other requirements for receiving benefits, including that the terminated employee sign a release. (*Id.* at § 2(a)(iv)).

[3] Under the Plan, Deutsche Bank Americas Holding Corp., as Plan Administrator, "has delegated responsibility for the day-to-day administration of the Plan to . . . the Oversight Committee." (*Id.* at § 7).

she must seek further review within 60 days. (*Id.*). The Oversight Committee then has 60 days within which to notify the employee of its final decision. (*Id.*). The Plan states "Employees must follow the claims and appeals procedure in this Section 8 before taking any legal action in any other forum regarding a claim for benefits under the Plan." (*Id.*).

### C.   Plaintiff Files An Administrative Claim Beyond The Plan Deadline

Although he resigned effective May 9, 2011, with notice of the Bank's position that he was ineligible for severance, Plaintiff waited until July 26, 2011 to submit a claim for severance benefits to the Oversight Committee.  (Whitaker Decl., Ex. B; Compl. ¶ 20).  He then reiterated his claim in a letter dated August 8, 2011.  (Whitaker Decl., Ex. C).  By letter dated October 21, 2011, the Committee notified Plaintiff that his claim was untimely under the Plan because it was not filed within 60 days of his termination from the Bank.  (Whitaker Decl., Ex. D).  The Committee further stated that it was nevertheless denying his claim for severance benefits based on the Plan provisions.  (*Id.*; Compl. ¶ 21).  As explained in the letter, the fact that Plaintiff resigned his employment prior to the June 30, 2011 Termination Date designated by the Bank disqualified him from receiving severance under the express terms of the Plan.  (*Id.*).  The Committee notified Plaintiff that he had the right, under the Plan's administrative review procedures, to appeal the decision and provided him with an additional copy of the Plan for reference.  (*Id.*).  Plaintiff did not appeal the Committee's October 21, 2011 determination. (Compl. ¶ 20).

### D.   The Complaint/ERISA Claims

Despite Plaintiff's failure to timely and fully exhaust his administrative remedies under the Plan, he commenced this action on January 19, 2012, seeking to recover severance benefits. In his Complaint, Plaintiff asserts: (i) a claim under ERISA Section 510, based on his theory that the Bank's refusal "to allow Plaintiff to leave his position prior to June 30, 2011" constituted

unlawful interference with his rights under the Plan (Compl. ¶¶ 22-27); and (ii) a claim for benefits under ERISA Section 502(a)(1)(B), challenging the denial of his request for severance benefits under the Plan's terms (*id.* at ¶¶ 28-35).[4]

## III.   ARGUMENT

### A.   Applicable Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the allegations contained in the complaint. *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only *factual* allegations, rather than mere *legal* conclusions, are entitled to the assumption of truth. *Iqbal,* 129 S. Ct. at 1950. Where, as here, the facts alleged, even if believed, do not state a viable legal claim, dismissal is warranted. *Id.*

### B.   Plaintiff's ERISA Section 502(a)(1)(B) Claim Should Be Dismissed

#### 1.   The Unambiguous Terms Of The Plan Foreclose Plaintiff's Benefit Claim

Plaintiff's claim for benefits should be dismissed because it finds no support in the Plan's clear terms. Where, as here, the plan confers discretion on the plan administrator, a court reviews a plan administrator's decision to deny benefits for abuse of discretion.[5] *Pagan v.*

---

[4] Pursuant to a stipulation by the parties, the Defendants in this action are: (1) Deutsche Bank Americas Severance Pay Plan; (2) Deutsche Bank Americas Holding Corp., in its capacity as Plan Administrator; and (3) Deutsche Bank Trust Company Americas, in its capacity as Plaintiff's employer. (Docket No. 4).

[5] The Plan provides in relevant part as follows:

> The Company and the Oversight Committee shall have the discretionary authority and responsibility to determine eligibility

*NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). Under this deferential standard, the district court may overturn a decision of the plan administrator only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Kirk v. Readers Digest Ass'n*, 57 F. App'x 20, 23 (2d Cir. 2003) (*quoting Pagan*, 52 F.3d at 442).

In this case, because the relevant Plan terms are clear and unambiguous and susceptible to only one reasonable interpretation, the Oversight Committee's decision to deny Plaintiff's claim for severance benefits must be upheld as a matter of law, regardless of the standard of review. *Rellou v. JP Morgan Chase Long-Term Disability Plan*, No. 07-CV-1334, 2009 U.S. Dist. LEXIS 91433, at *20-21 (S.D.N.Y. Sept. 30, 2009) (upholding the administrator's decision regardless of the standard of review because it was consistent with the plan terms), *aff'd*, 439 F. App'x 21 (2d Cir. 2011);[6] *see also Griffin v. New York State Nurses Ass'n Pension Plan & Benefits Fund*, 757 F. Supp. 2d 199, 217 (E.D.N.Y. 2010) ("Given the undisputed facts and the plain and unambiguous language of the Plan, no rational factfinder could conclude that the decision was arbitrary and capricious."); *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 392-393 (S.D.N.Y. 2006) (rejecting plaintiff's claim for benefits where the terms of the ERISA plan made clear that benefits were conditioned on continued employment).

The Plan specifically states that an employee is not entitled to severance benefits unless the employee remains in his or her position until the Termination Date, which is designated by

---

> for benefits and the amount of such benefits, and to construe the terms of the Plan. The determinations and constructions of the Company or the Oversight Committee, as the case may be, will be final, binding and conclusive as to all parties, unless found by a court of competent jurisdiction to be arbitrary and capricious.

Whitaker Decl., Ex. A § 7.

[6] Because Plaintiff is not eligible for benefits under unambiguous Plan language, this Court may resolve Plaintiff's benefit claim on a motion to dismiss. *Rellou*, 2009 U.S. Dist. LEXIS 91433 at *19.

the Bank in its sole discretion.  (Whitaker Decl., Ex. A § 2(a)).  The Plan also provides that an employee will not be eligible for benefits under the Plan if his or her termination is the result of the employee's resignation.  (*Id.* § 2(c)).  Plaintiff concedes that the Bank notified him that he would have to remain in his position until the Termination Date of June 30, 2011 in order to receive severance benefits.  (Compl. ¶ 18).  Plaintiff nevertheless resigned his employment effective May 9, 2011.  Therefore, under the unequivocal terms of the Plan document, Plaintiff is not entitled to severance benefits and his claim should be dismissed.  *See, e.g., Sallee v. Rexnord Corp.*, 985 F.2d 927 (7th Cir. 1993) (dismissing Section 502(a)(1)(B) claim for severance benefits, where plaintiffs resigned and plan limited benefits to terminated persons).[7]

### 2.    Plaintiff's Benefit Claim Is Barred, In Any Event, For Failure To Timely Exhaust The Plan's Administrative Remedies

Even if Plaintiff could challenge a denial of benefits due under the Plan (which he cannot), his claim should still be dismissed because he did not timely or fully exhaust the Plan's administrative remedies before bringing this action.

An ERISA plaintiff must exhaust all available administrative remedies before filing suit to challenge a denial of ERISA benefits. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002).  As this Court explained in *Kesselman v. Rawlings Co., LLC*, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009), the exhaustion requirement serves a number of important policy considerations, including: "'to reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial

---

[7] Under ERISA Section 502, only "participants" and "beneficiaries" have standing to sue for plan benefits.  29 U.S.C. § 1132(a)(1)(B).  Where a severance plan has patently excluded from participation persons who resign from employment, some courts have dismissed for lack of standing benefit claims brought by employees who resigned.  These courts have reasoned that, by resigning, the plaintiff never became a plan "participant" to begin with, and thus lacked the standing necessary to sue under ERISA's civil enforcement scheme.  *See Sallee*, 985 F.2d at 928-29; *Miller v. Rite Aid Corp.*, 334 F.3d 335, 345 (3d Cir. 2003) (same).

method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" (quotation omitted). *See also Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (listing important policy considerations served by exhaustion); *Conkright v. Frommert*, 130 S. Ct. 1640, 1649 (2010) (recognizing the important interests served by deferring to plan administrators in matters of plan interpretation).

Plaintiff failed to meet the Plan's exhaustion requirement in two ways, either of which provides an independent basis for dismissal. First, Plaintiff failed to file a claim for benefits with the Oversight Committee within 60 days after his Termination Date which, under the definition set forth in Section 2 of the Plan, was his May 9, 2011 resignation date. (Whitaker Decl., Ex. A at § 8). Instead, Plaintiff waited until July 26, 2011, almost 80 days after his resignation, to notify the Oversight Committee regarding his claim for severance benefits. (Whitaker Decl., Ex. B; Compl. ¶ 20). Courts in this Circuit and elsewhere have routinely dismissed ERISA benefit claims where the plaintiff, like Plaintiff here, did not timely file a claim under the plan's review procedures. *Suthar v. Eastman Kodak Co.*, No. 09-CV-6403-CJS, 2010 U.S. Dist. LEXIS 41859, at *11-12 (W.D.N.Y. Apr. 28, 2010) (dismissing plaintiff's claim for benefits because he did not timely submit his claim to the plan administrator as required by the plan's administrative procedures); *DuPont v. Sklarsky*, No. 08-1724 (JAP), 2009 U.S. Dist. LEXIS 23056, at *16 (D.N.J. Mar. 20, 2009) (same).[8]

---

[8] While Plaintiff may argue that the May 10, 2011 email he sent to the Vice President of the Bank constituted his initial claim for benefits under the Plan, this argument is baseless because the Plan expressly requires that employees submit all claims for benefits to the Oversight Committee. (Whitaker Decl., Ex. A at § 8). The law is clear that a claimant may not unilaterally modify or otherwise ignore a plan's administrative procedures and deadlines. *See Thomas v. Verizon*, No. 04-5232 Civ., 2005 U.S. App. LEXIS 25424, at *2-3 (2d Cir. Nov. 22, 2005) (a plaintiff must follow the administrative procedures as set forth in the plan); *see also Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.*, No. 5:06-CV-42, 2007 U.S. Dist. LEXIS 21252, at *11 (N.D.N.Y. Mar. 26, 2007) (a letter to plaintiff's employer complaining that his benefits were

Second, Plaintiff failed to appeal the Oversight Committee's October 21, 2011 determination, as required by the Plan. The Court of Appeals for the Second Circuit has held that a plan's administrative review procedures must be fully exhausted as a prerequisite to a suit to recover ERISA benefits. *See, e.g., Klotz v. Xerox Corp.*, 332 F. App'x 668, 669-70 (2d Cir. 2009) (affirming dismissal where plaintiff failed to utilize the second level of the appeals process). Consistent with this authority, Plaintiff's claim for benefits under ERISA Section 502(a)(1)(B) should be dismissed.

**C.   Plaintiff's ERISA Section 510 Claim Should Be Dismissed**

Plaintiff's ERISA Section 510 claim fares no better than his benefit claim. It should be dismissed because: (i) the Complaint fails to plead that the Bank took any adverse employment action against Plaintiff, which is essential to a Section 510 claim; and (ii) the relief Plaintiff seeks is unavailable under ERISA Section 502(a)(3), the civil enforcement provision through which Section 510 claims can be brought.

**1.   Plaintiff's Section 510 Claim Fails Because the Bank Took No Adverse Employment Action Against Him**

Plaintiff's interference claim should be dismissed, in the first instance, because the Complaint fails to allege conduct actionable under Section 510. ERISA Section 510 makes it unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]. . . ." 29 U.S.C. § 1140.[9] Courts in the Second Circuit have adopted the view that Section 510 "only proscribes

---

wrongfully withheld did not constitute exhaustion because the plan required participants to file any benefit claims with the plan administrator).

[9] As the Second Circuit explained in *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988), Section 510 "was designed primarily to prevent unscrupulous employers from

interference with the employment relationship." *Keir v. Unumprovident Corp.*, No. 02 CIV 8781, 2010 U.S. Dist. LEXIS 95560, at *26 (S.D.N.Y. Sept. 14, 2010) (quotations omitted); *see also Degrooth v. General Dynamics Corp.*, 837 F. Supp. 485 (D. Conn. 1993) (granting motion to dismiss Section 510 claim where loss of benefits did not result from adverse employment action). Employer conduct that results in a loss of benefits—but does not impact the employment relationship—is not actionable under Section 510. *See, e.g., Tirone v. New York Stock Exch., Inc.*, No. 05 Civ. 8703, 2006 U.S. Dist. LEXIS 69591, at *10 (S.D.N.Y. Sept. 28, 2006) (dismissing plaintiff's Section 510 claim, reasoning that decision to change disabled employee's administrative status from "employee" to "terminated," which rendered plaintiff ineligible for health benefits, did not impact employment relationship); *Mansfield v. Lucent Techs.*, No. 04 Civ. 3589, 2005 U.S. Dist. LEXIS 20036, at *3 (D.N.J. Sept. 1, 2005) (dismissing Section 510 claim asserted by former employee whose long term disability benefits were discontinued after he was misclassified as "retired," reasoning that misclassification for plan purposes did not constitute adverse employment action).[10]

In this case, Plaintiff's Section 510 claim is based on the Bank's refusal to terminate his employment in advance of his Termination Date. (Compl. ¶ 26). Even assuming the truth of this allegation, it does not state a valid claim under Section 510. The Bank's decision to continue Plaintiff's employment to his Termination Date had no adverse impact on Plaintiff's employment

---

discharging or harassing their employees in order to keep them from obtaining vested pension rights." (quotations omitted).

[10] *See also Downes v. J.P. Morgan Chase & Co.*, No. 03 Civ. 8991, 2004 U.S. Dist. LEXIS 10510, at *16-17 (S.D.N.Y. June 3, 2004) (holding that no cause of action existed under Section 510 for plaintiff's misclassification as independent contractor, which did not impact employment relationship); *Blake v. Bank of New York*, No. 90 Civ. 4202, 1992 U.S. Dist. LEXIS 10877, at *9 (S.D.N.Y. July 22, 1992) (ERISA Section 510 "is designed to protect the employment relationship that gives rise to an individual's benefit rights, not to create an action for wrongfully withheld benefits, which is covered by [ERISA Section 502(a)(1)(B)]") (quotations omitted).

status. *See, e.g., Blessing v. J.P. Morgan Chase & Co.*, 394 F. Supp. 2d 569, 582 (S.D.N.Y. 2005) (rejecting argument that employer's offer of continued employment could trigger Section 510 claim because it prevented plaintiff from attaining severance pay); *Stout v. Bethlehem Steel Corp.*, 957 F. Supp. 673, 694 (E.D. Pa. 1997) ("Offering a job, or the chance to continue employment, has never been prohibited employer conduct, and it would be a ludicrous distortion of ERISA to make it so."). Indeed, the only adverse action initiated by the Bank was Plaintiff's impending June 30, 2011 termination, which would have triggered, not prevented, his eligibility for benefits.

The fact that Plaintiff may have wished to be terminated early in order to qualify for severance benefits does not compel a different conclusion. ERISA does not require an employer to modify the employment relationship to make persons eligible for benefits they are not otherwise entitled to receive under the written plan. *See Bodine v. Emplrs. Cas. Co.*, 352 F.3d 245, 250-51 (5th Cir. 2003) (holding that Section 510 did not afford plaintiffs a cause of action to challenge their employer's refusal to terminate them to render them eligible for enhanced retirement benefits payable to terminated employees); *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 662 (7th Cir. 1997) (concluding that employer's refusal to reinstate and then terminate plaintiff so that she qualified for benefits did not constitute a Section 510 violation). That principle is particularly pertinent here. Under the terms of the Plan (as in many severance plans), severance was used to incentivize employees to remain with the Bank until a Termination Date selected by the Bank for its convenience and at its discretion. For this reason, the Plan disqualified from participation persons who resigned before their Termination Dates. It would defeat the purpose of the Plan if employees could resign before their Termination Dates and nevertheless compel the Bank to terminate them so they could receive severance. Section 510

protects an employee's right to benefits under an ERISA plan; it is not a vehicle for bypassing a plan's clear terms and frustrating its purpose. *Brehmer*, 114 F.3d at 662 (dismissing Section 510 claim and noting that it would have been impermissible for employer to fabricate the plaintiff's termination of employment in order to render her eligible for plan benefits).

The Seventh Circuit's decision in *Sallee v. Rexnord Corp.*, 985 F.2d 927, 929-30 (7th Cir. 1993) is instructive on this point.  In *Sallee*, the plaintiffs' employer was purchased by another company, which continued to operate plaintiffs' division while its operations were phased down gradually over a four-month period.  As employees began to search for and obtain other employment in the face of their impending lay-offs, the employer negotiated their termination dates so that some would be eligible for severance.  When the plaintiffs obtained offers of employment and approached their employer about scheduling their termination dates, the company refused.  Plaintiffs decided to resign so as to commence employment elsewhere.  They subsequently commenced an action under ERISA Section 510 for severance benefits.

Like the Deutsche Bank plan, the *Sallee* plan provided severance to "an Employee whose employment is terminated by the Company for reasons other than cause . . ., provided he remains in the Company's employ until the termination date specified in the termination notice furnished to him by the Company."  In the face of this language, the Court of Appeals for the Seventh Circuit dismissed the plaintiffs' Section 510 claims as a matter of law.  The court explained:

> The severance pay provision offers a carrot for departing at the employer's convenience, not at their own.   It is a form of compensation for forgoing other employment opportunities. These plaintiffs wanted the severance pay even though they demanded to go at their own convenience. This is hardly discrimination:  they explicitly refused to do that which the Plan makes a condition of qualification.

985 F.2d at 929-30.

Applying these principles here, Plaintiff's Section 510 claim should be dismissed as a matter of law.  The Bank's refusal to terminate Plaintiff before his Termination Date is not conduct actionable under Section 510.  Moreover, as in the *Sallee* case, Plaintiff lost benefits because of his inability to satisfy the Plan's conditions to receive benefits.  His Section 510 claim is without merit.

### 2.  Plaintiff's Section 510 Claim Also Fails Because He Seeks Relief That Is Unavailable Under ERISA Section 502(a)(3)

Plaintiff's ERISA Section 510 also fails because the relief he seeks—severance benefits for which he is ineligible under the terms of the Plan—is unavailable under ERISA Section 502(a)(3), ERISA's enforcement provision for Section 510 claims.  *See Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331, 333 (2d Cir. 1997) (holding that ERISA Section 510 is enforced through ERISA Section 502(a)(3)).

Section 502(a)(3) of ERISA allows a participant to bring an action "to obtain other appropriate equitable relief[.]" 29 U.S.C. § 1132(a)(3); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (specifying that only equitable relief is available under ERISA Section 502(a)(3)).  In this case, Plaintiff seeks the severance benefits he believes were improperly withheld when he resigned.  Courts in this Circuit and elsewhere have readily dismissed Section 510 claims where the relief sought was in the form of benefits withheld, reasoning that benefits are not a form of equitable relief available to remedy a Section 510 action.  Rather, they are money damages, which are unavailable under ERISA Section 502(a)(3).  *See, e.g., Wharton*, 467 F. Supp. 2d at 391-92 (dismissing plaintiff's Section 510 claim and holding that plaintiff's request for restitution did not seek equitable relief under Section 502(a)(3) because it was merely "another manner of seeking to recover the benefits she claims she is owed"); *Alexander v. Bosch Auto. Sys.*, No. 05-6010, 232 F. App'x 491, 500-02 (6th Cir. 2007) (dismissing plaintiffs' Section

510 claim because they were not entitled to a remedy under Section 502(a)(3) in the form of lost benefits); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 655-58 (3d Cir. 2007) (same).

In sum, under these authorities, Plaintiff's Section 510 claim should be dismissed because he has not stated a claim for which relief may be granted under Section 502(a)(3).

## IV.  **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety.


Dated: New York, New York
         March 22, 2012

                                        Respectfully submitted,

                                        LITTLER MENDELSON, P.C.


                                        s/ Deidre A. Grossman
                                        By: Deidre A. Grossman
                                        900 Third Avenue, 8th Floor
                                        New York, NY 10022
                                        Telephone: 212.583.9600
                                        Facsimile: 212.832.2719
                                        dgrossman@littler.com

Of Counsel:
Melanie A. Houghton
                                        Attorneys for Defendants
                                        Deutsche Bank Americas Holding Corp.;
                                        Deutsche Bank Americas Severance Pay Plan;
                                        and Deutsche Bank Trust Company Americas


Firmwide:109658277.5 070698.1001