UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN CIOINIGEL,<br><br>        Plaintiff,<br><br>-against-<br><br>DEUTSCHE BANK AMERICAS HOLDING CORP.; DEUTSCHE BANK AMERICAS SEVERANCE PAY PLAN; AND DEUTSCHE BANK TRUST COMPANY AMERICAS,<br><br>        Defendants. | Civil Action No. 12 CIV 0434 (BSJ) (FM) |

### DEFENDANTS' REPLY MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS

**LITTLER MENDELSON, P.C.**
Deidre A. Grossman
900 Third Avenue
New York, New York 10022
Telephone: 212.583.9600

Attorneys for Defendants
Deutsche Bank Americas Holding Corp.;
Deutsche Bank Americas Severance Pay Plan;
and Deutsche Bank Trust Company Americas

I.  **PRELIMINARY STATEMENT**

Had Plaintiff remained with the Bank until his scheduled Termination Date, he would have been eligible for the severance benefit he now seeks in this court action. Because Plaintiff resigned to accept other employment, however, his ERISA claims must be dismissed. As Defendants discussed in their moving brief, Plaintiff's benefit claim under ERISA Section 502(a)(1)(B) is barred by the Plan's clear terms, affording benefits only to terminated employees. His interference claim fails because his voluntary resignation does not constitute adverse employment action, which is required to state a Section 510 claim.

In his opposition brief, Plaintiff does not dispute that the Plan's unambiguous language bars his benefit claim. His Section 502(a)(1)(B) claim should, therefore, be dismissed outright. Plaintiff's facile contention, in support of his Section 510 claim, that he was "constructively discharged" before his Termination Date also falls flat. The Complaint states that Plaintiff's job responsibilities decreased naturally as part of the transition of his position to the Bank's Jacksonville, Florida branch. As a matter of Second Circuit law, these circumstances do not rise to the level of constructive discharge. And, in any event, Plaintiff does not allege that his responsibilities diminished "for the purpose of interfering with" a right to severance benefits, as Section 510 requires. Therefore, his Section 510 claim should be dismissed.

II.  **ARGUMENT**

    A.  **Plaintiff's ERISA Section 502(a)(1)(B) Claim Should Be Dismissed**

        1.  **Plaintiff Has Alleged No Basis to Avert the Plan's Clear Terms**

Plaintiff does not dispute that his claim for severance is barred by the Plan's clear terms. Instead, he seeks to distract the Court with two misplaced arguments.

Plaintiff's first argument—that he has standing to pursue his ERISA benefit claim (Opp. at 4-5)—is entirely irrelevant to this motion. Having standing to sue under ERISA does not

equate to having a cognizable claim to benefits under ERISA Section 502(a)(1)(B). *See Boison v. Ins. Servs. Office, Inc.*, No. 11-cv-0972 (ADS)(ARL), 2011 U.S. Dist. LEXIS 145408, at *11, 34 (E.D.N.Y. Dec. 17, 2011) (finding that plaintiff had ERISA standing, but nevertheless dismissing plaintiff's benefit claim under Federal Rule 12(b)(6)). In this case, even assuming Plaintiff has standing (which is highly questionable),[1] he has no viable benefit claim because he is ineligible for severance under the Plan's unambiguous language, which conditions benefits on an employee remaining employed until his Termination Date. (*See* MTD at 6-7). Plaintiff does not address the applicable Plan language, let alone dispute that it defeats his claim. Instead, he contends, in his opposition, that he reserved the right to seek severance benefits. Even if true, this fact is immaterial, since the Plan's terms bar Plaintiff's claim irrespective of any reserved right. Similarly inapposite are the cases Plaintiff cites (Opp. at 5), since none address plan language like that at issue in this case.[2]

Plaintiff's second argument—that this Court must evaluate the Bank's alleged conflict before dismissing Plaintiff's claim for severance benefits—is equally misplaced. Plaintiff is correct that, under *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008), a plan administrator's

---

[1] *See Sallee v. Rexnord Corp*, 985 F.2d 927 (7th Cir. 1993) and *Miller v. Rite Aid Corp.*, 334 F.3d 335 (3d Cir. 2003) (MTD at 7 n. 7), where the courts dismissed ERISA claims virtually identical to Plaintiff's on standing grounds, finding, as a threshold matter, that the plan terms defeated the plaintiffs' status as plan participants.

[2] To the extent Plaintiff is claiming, as part of his standing argument, that he somehow "accrued" severance benefits by completing his assigned tasks (Opp. at 5), his position is easily defeated by the Plan's clear language, which conditions benefits on an employee remaining with the Bank until his or her Termination Date. His vague suggestion, made for the first time in his opposition brief (Opp. at 5), that Human Resources informed him that severance could be available before his Termination Date adds nothing to this position. In his Complaint, Plaintiff specifically states that Human Resources advised him that he would forfeit severance if he left the Bank before June 30, 2011. *See* Compl. ¶ 18; *see also* Opp. at 3. Thus the statement in his opposition is contradicted by Plaintiff's own allegations. *See also Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) (opposition brief cannot amend complaint).

dual role conflict (as the person or entity that both decides and pays a claim for benefits) is a factor courts weigh when reviewing an administrator's claim denial for abuse of discretion. In this case, however, Plaintiff has not even pleaded a conflict of interest, let alone that a conflict impacted the Oversight Committee's decision to deny him benefits. "No weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010) (*citing Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009)).

Additionally, where, as here, the terms of the plan are unambiguous and only subject to one reasonable interpretation, a court may dismiss a claim for benefits as a matter of law, without assessing conflict considerations. *See Rellou v. Dir. of Human Res. JP Morgan Chase Long-Term Disability Plan*, 439 F. App'x 21, 23 (2d Cir. 2011) (affirming dismissal of plaintiff's benefit claim, irrespective of any conflict, where plan language was unambiguous); *Funk v. CIGNA Group Ins.*, 648 F.3d 182, 192 (3d Cir. 2011) (concluding that conflict analysis was unnecessary where plan terms were subject to only one reasonable interpretation); *Boison*, 2011 U.S. Dist. LEXIS 145408, at *12 (granting Rule 12(b)(6) motion and dismissing benefit claim, finding benefit denial to be reasonable notwithstanding administrator's inherent conflict of interest). In this case, the Plan provisions precluding the award of benefits to persons who resign before their Termination Dates could not be clearer. Plaintiff has not identified any ambiguity in this language or suggested a contrary construction. Consequently, this Court should proceed to interpret the Plan in the only reasonable way it can be read and dismiss Plaintiff's claim on the basis of the clear Plan language.

### 2. Plaintiff Has Not Alleged Facts Establishing Timely Exhaustion of the Plan's Administrative Remedies or That Exhaustion Would Be Futile

Because Plaintiff's claim for benefits is barred by the Plan's unambiguous language, it is

immaterial whether or not Plaintiff timely exhausted the Plan's administrative procedures before proceeding to federal court. Plaintiff's contention that those procedures were exhausted, or should be waived on futility grounds, is in any event misplaced. Therefore, should the Court conclude that the Plan is unclear (which it is not), Plaintiff's benefit claim should still be dismissed with prejudice because he has not exhausted the Plan's administrative remedies and the time to do so has expired.

Plaintiff never timely exhausted the Plan's procedures because his May 10, 2011 email to the Bank's Vice President did not comport with the Plan's rules requiring that employees submit all claims to the Oversight Committee. (Whitaker Decl., Ex. A at § 8). Courts have not hesitated to dismiss ERISA claims where, as here, a plaintiff failed to follow a plan's claim filing procedures. *See, e.g., Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.*, No. 5:06-CV-42, 2007 U.S. Dist. LEXIS 21252, at *11 (N.D.N.Y. Mar. 26, 2007) (dismissing complaint for failure to exhaust where plaintiff sent letter to employer instead of plan administrator).[3] Moreover, even if Plaintiff's email constituted a claim (which it did not), Plaintiff was informed by the Oversight Committee's October 21, 2011 determination of an additional level of review to exhaust before proceeding to court. (Whitaker Decl., Ex. D). Plaintiff never exhausted that second level and the time to do so has now passed.[4]

---

[3] Plaintiff's counsel sent a letter to the Oversight Committee dated July 26, 2011, in which he specifically references the Plan document. (Whitaker Decl., Ex. B). The formal appeals procedures are contained therein. (Whitaker Decl., Ex. A § 8). Thus, Plaintiff's contention that there is no evidence he was informed of the formal appeals procedure is incorrect.

[4] *See, e.g., Klotz v. Xerox Corp.*, 332 F. App'x 668, 669-70 (2d Cir. 2009) (affirming dismissal where plaintiff failed to utilize second level of appeals process); *Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, 517 F. Supp. 2d 646, 653 (W.D.N.Y. 2007) (dismissing claim where plaintiff failed to seek review within 60-day period required by plan and time to appeal had expired); *Sanfilippo v. Provident Life & Cas. Ins. Co.*, 178 F. Supp. 2d 450, 458 (S.D.N.Y. 2002) (holding that plaintiff's failure to timely pursue appeal barred ERISA claim).

Plaintiff cannot avoid the exhaustion requirement with his bare allegation that exhaustion would be futile. As this Court stressed in *Kesselman v. Rawlings Co.*, 668 F. Supp. 2d 604 (S.D.N.Y. 2009), to fall within the futility exception to exhaustion, a claimant must make a "clear and positive showing" that pursuing available administrative remedies would be futile. *Id.* at 609 (*quoting Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130 (2d Cir. 2000)). A plaintiff who fails to allege specific facts establishing futility cannot invoke the exception. *See Kesselman*, 668 F. Supp. 2d at 610.[5] *Jonas v. New York State Soc. of Certified Public Accountants Ins. Plans*, CV 91-4399 (ADS), 1992 U.S. Dist. LEXIS 19159 (E.D.N.Y. Dec. 8, 1992), cited by Plaintiff, is not to the contrary. There, the court agreed that exhaustion would be futile primarily because the policy providing for the benefits in question did not appear to have a formal appeals procedure. *Jonas*, 1992 U.S. Dist. LEXIS 19159, at *9. But here, there is no disputing that the Plan contains a procedure that Plaintiff did not follow.

In sum, because Plaintiff has failed to allege facts sufficient to make a showing of timely exhaustion or futility, Plaintiff's ERISA Section 502(a)(1)(B) should be dismissed.

### B. Plaintiff's ERISA Section 510 Claim Should Be Dismissed

#### 1. Plaintiff's Attempt to Establish the Required Adverse Employment Action Based on a Constructive Discharge Theory Is Baseless

In their moving papers, Defendants cited a long line of authorities that established that Plaintiff's resignation did not constitute adverse employment action cognizable under ERISA Section 510.[6] In response, Plaintiff attempts to cure the absence of any adverse employment

---

[5] *See also Niblo v. UBS Global Asset Mgmt. (Americas)*, No. 11 Civ. 4447 (DAB), 2011 U.S. Dist. LEXIS 154400, at *12-13 (S.D.N.Y. Mar. 21, 2011); *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, No. 09 Civ. 8944 (PGG), 2011 U.S. Dist. LEXIS 32750, at *19-21 (S.D.N.Y. Mar. 29, 2011).

[6] *See also Curby v. Solutia, Inc.*, 351 F.3d 868, 872 (8th Cir. 2003) ("An employee cannot submit a resignation and then claim the employer's acceptance of the resignation is an adverse

action by claiming that he was "constructively discharged" by the Bank before June 30, 2011 when his job responsibilities diminished. Plaintiff's position is baseless, however, because he admits that his job responsibilities decreased pursuant to a wind-down leading up to the elimination of his position and its transition to Jacksonville, Florida. This is a far cry from constructive discharge which, Plaintiff concedes through his own legal citations, "is the most aggravated form of a hostile environment." *Scott v. Harris Interactive*, 10 Civ. 5005 (HBP), 2012 U.S. Dist. LEXIS 36839, at *41, 47-50 (S.D.N.Y. Mar. 19, 2012) (rejecting plaintiff's claim for severance based on constructive discharge theory despite significant reduction in plaintiff's job duties and salary absent proof that employer intentionally created atmosphere so intolerable that he was forced to quit); *see also* Opp. at 7 (describing constructive discharge as involving allegations of "humiliation and embarrassment").

The case of *Criscuolo v. Joseph E. Seagram & Sons, Inc.*, 02 Civ. 1302, 2003 U.S. Dist. LEXIS 18991 (S.D.N.Y. Oct. 17, 2003), is instructive on the difference between a constructive discharge and a decrease of job duties inherent in the elimination of a position. In *Criscuolo*, the plaintiff's employer was purchased by another company, which announced that it intended to phase out plaintiff's division. To encourage employees to remain until the closing, rather than resign immediately after the sale, plaintiff's employer announced several internal incentives, including a severance benefit. Prior to the closing, plaintiff accepted a position with a competitor and resigned. Plaintiff's claim for severance was denied, prompting him to commence an ERISA action.

---

employment action.") (quotations omitted); *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (rejecting plaintiff's 510 claim because "[n]one of the employees were 'discharged, fined, suspended, expelled, [or] disciplined.' They were simply allowed to retire when they wished.") (*quoting* 29 U.S.C. § 1140).

In the face of the plan's clear language, which provided severance only to employees who were involuntarily terminated, plaintiff asserted that he was constructively discharged because his working conditions had changed during the transition period and his position would be eliminated as soon as the sale closed. *Criscuolo*, 2003 U.S. Dist. LEXIS 18991, at \*23-24. The court rejected this argument, noting that plaintiff's employer did not create the conditions about which plaintiff complained in an effort to make his work atmosphere so intolerable that he would be compelled to resign. *Id.* at \*26. The court further explained:

> Those conditions were inherent in the transition that motivated Vivendi's decision to establish enhanced employee benefits in the first place. Far from trying to force him to resign, Vivendi amended Criscuolo's severance plan and created other incentives, such as the aptly named 'stay bonus,' precisely in order to encourage him and comparable employees to remain despite the 'disarray' occasioned by Vivendi's imminent sale of Seagram to the Buyers. As a matter of law, no reasonable fact-finder could conclude that under these circumstances Vivendi 'intentionally created a work atmosphere so intolerable that [Criscuolo was] forced to quit.'

*Id. See also Sallee v. Rexnord Corp.*, 985 F.2d 927, 929-30 (7th Cir. 1993) (rejecting plaintiffs' claim for severance benefits where plan was created to incentivize employees to stay through transition period and plaintiffs resigned early to accept other employment).

Applying these principles here, this Court should dismiss Plaintiff's Section 510 claim based on a constructive discharge theory. According to the Complaint, the conditions about which Plaintiff complains—the reduction of his job responsibilities—were inherent in the transition of Plaintiff's job to Florida and not the result of a plan to force Plaintiff to quit early through intolerable working conditions. (Compl. ¶ 13-15). In fact, like the plaintiff in *Criscuolo*, had Plaintiff not resigned, he would have been eligible for the severance the Bank offered to employees who remained for the full transition period until their scheduled Termination Dates. But even if Plaintiff could make out a constructive discharge claim (which

-7-

he cannot), he has not alleged that his responsibilities were reduced *for the purpose of interfering with a benefit right*. 29 U.S.C. § 1140 (protecting against adverse employment action taken "for the purpose of interfering with the attainment of [a plan right]"). Rather, he states that his duties were decreased in order to transition his position. Because Section 510 requires that a discharge be to interfere with benefits, Plaintiff's claim should be dismissed on this ground as well.

### 2. Plaintiff Has Not Pleaded a Claim for Equitable Relief Under ERISA Section 502(a)(3)

Plaintiff has made no attempt to address, let alone counter, Defendants' position that the relief Plaintiff seeks is unavailable under ERISA Section 510. The two cases he cites have absolutely no discussion of Section 510 remedies. (Opp. at 9). Thus, dismissal is warranted under the authorities cited by Defendants in their opening brief. (MTD at 13-14).

### III. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety.

Dated: New York, New York
      May 17, 2012

Respectfully submitted,

LITTLER MENDELSON, P.C.

s/ Deidre A. Grossman
By: Deidre A. Grossman
900 Third Avenue, 8th Floor
New York, NY  10022
Telephone: 212.583.9600
Facsimile: 212.832.2719
dgrossman@littler.com

Of Counsel:
Melanie A. Houghton

Attorneys for Defendants
Deutsche Bank Americas Holding Corp.;
Deutsche Bank Americas Severance Pay Plan;
and Deutsche Bank Trust Company Americas